O’Neall, J.
In these cases, I concur in the result, but for reasons different, in some respects, from those stated by a majority of the court. On the part of myself and the member of the court concurring with me, I will state, very-briefly, our views.
It is true, beyond all doubt, that the defendants are to be regarded as common carriers, and that their contract has not divested them of that character ; for as the owners of the steamboat Kershaw, carrying cotton for hire, between Columbia and Charleston, on one of our navigable rivers, they could have no other position. The contracts with these plaintiffs merely added to the exceptions in their favor, of the act of God and the enemies of the ■country, “ the dangers of fire,” for the dangers of navigation mean no more than what have been previously allowed as the act of God.
It is true, too, I have no doubt, that the carrier cannot excuse himself, under any view of that exception, without shewing the manner of the loss, so that the court may know that it was an accident, at least, against which the care of a reasonable man, in the charge of his own goods, •could not guard. But to have the cases to rest upon that view, is, we think, not approaching the important principle involved. It is what is meant by “ dangers of fire and *311 navigation,” in one receipt, and “ unavoidable accidents of navigation and fire” in the other,
Both mean precisely the same thing; they both mean to exempt the carrier from fire, which, as to him, was unavoidable. What that is, is the difficulty. Taking the words in connection with navigation, it would seem that if dangers, or unavoidable accidents of navigation, mean ac-tus Dei, and no more; then dangers of fire, or unavoidable accidents of fire, would also mean actus Dei. If we had nothing to guide us, but the fact that we were considering a loss by fire, arising out of such a contract, by a carrier, as those to which I have alluded, we might find it very difficult to avoid the construction before indicated. But the case of Patton vs. Magrath & Brooks , Dud. 159, gave rise to the very exception before the court. In that case it had been argued, that the navigation of steamboats being caused by fire, made them so liable to destruction by that element, that this danger ought to be classed as ac-tus Dei. In that case, my brother Richardson, speaking for the court, said, in reply to that argument, “the loss by fire, which, occurring in another boat, renders the owner liable, will, in like manner, make liable the owner of a steamboat propelled by fire.” In another part of the same opinion, speaking of the exception which had been attempted to be set up, he says, “ need I remind the owners of steamboats, that they have but to give public notice that they will not be liable in a certain class of cases, and, to deceive no one, give no other bill of lading but with the express exception written, 1 not to be liable for accidents by fire,’ and they make the desired exception.”
How contracts containing this very exception, made after this opinion, can be construed to give any larger meaning to it than is indicated by its terms, is what I cannot comprehend. To extend it, would, beyond all doubt, give a meaning not entering into the minds of the contracting parties. They are to be understood as contracting in reference to the law. When the plaintiffs’ receipts are read in connection with Patton vs. Magrath & Brooks, no one can hesitate in believing that the parties intended to say, the boat owners shall not be liable for a loss result *312 ing from the burning of the boat by fire unavoidably communicated to her cargo by fire originating from that used in propelling the boat. This seems to us a just construction of the contract arising from the subject matter. The vessel to carry is a fire boat, the thing to be carried is cotton ; an inflamable article is thus put in proximity to fire !
Well might the carrier say, my boat makes it dangerous to carry cotton; with the guards I have provided, I think it comparatively safe ; still I am not willing to be bound as an insurer. The consignor might very well conclude, the danger of burning by the element used in propelling her, is so carefully guarded, I will run that risk. That this risk, and this risk alone, would present itself to the minds of the parties, seems to me too clear to admit of doubt, and when fire was to be excepted, the danger from the boat herself would most naturally be that intended. If “any fire” had been the exception, the consignor might very well have said, you ought to have no special immunity from any except that which may be unavoidable, arising from the character of your boat.
In Abbott on Shipping, 258, is to be found 26 Geo. 3, c. 86, which exempts shipowners from a loss by reason or means of any fire happening on board the ship or vessel. The master is not mentioned, and therefore it was doubted whether the statute could exempt him. But by the bill of lading in England, is since generally excepted “ the act of God, the King’s enemies, fire, and all and every other danger and accident of the seas,” &c. and thus the master has been protected as well as the owner. For the bill of lading is construed by the law, which is an exemption from any fire, and of consequence, no matter how the ship is burnt, the carrier is not liable. But here, fortunately, we have no such provision. On the contrary, the only thing in the shape of law, pointing towards the exception, is the decision in Patton vs. Magrath & Brooks, and that was intended to advise the boatowners to guard by contract against a loss which might arise from the unavoidable burning of the boat by her own fire. There is no authority which compels us to adopt a construction of the contract manifestly against the sense of the parties. The *313 policy of trade, in this instance, as well as in the original cases against carriers, ought to induce us to hold them to a strict accountability ; for if it be once established that a carrier, under a contract like the present, is to be exempted by shewing that he used all the care which a prudent man could, and yet his boat was burnt, the result will be that he will be exempted from liability. For the very persons by whose negligence the fire may have originated are to be the witnesses, and they are very sure not to condemn themselves. But place the burning of a steamboat by her own fire done under the exception and along side of the act of God, and the result will be that the consignor will have a chance of establishing the carrier’s liability out of his inability to shew that the fire by which the boat was burnt originated from the fire used to create steam, her propelling power.
Give to the exception the construction for which I am contending, and there is a certainty in the principle by which the liability of the carrier is to be tested. Adopt any other and there is no rule in the matter. Every thing depends upon diligence, a diligence to be proved-by the boat’s crew. It may be therefore at once assumed, as settled, that whenever a steamboat is burnt, the consignor must bear the loss.
Take the construction which the court gives and the result will be that no one will ship on a steamer, for then the dangers of loss without compensation are so multiplied, that nothing save necessity could induce a shipment by such a boat. On the other hand, if the loss is limited to her own fire, the shipper may be willing to encounter this risk, on the ground that in the construction of the boat, every means which the ingenuity of man can devise have been resorted to, to protect her from this very danger.
I am hence persuaded that the true construction of this exception was given on the circuit, and that in Swindler’s case, there beiiig no .proof which could bring the defendants within the exception, the jury were right in finding against them. So in the other case, as the jury had the facts before them, and from them it is possible that the boat was unavoidably burnt from her own fire, (although *314 I confess I should not feel myself at liberty so to conclude) I am reluctantly constrained to say that the verdict in it ought also to stand.
Richardson, J. concurred,